THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
GENE FARNSWORTH, Defendant-Appellee.

Third District    No. 80-243

Opinion filed April 8, 1981.

James Teros, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellee.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

As a result of the execution of a search warrant in Rock Island County, defendant Gene Farnsworth was charged with unlawful possession of cannabis in violation of section 4(d) of the Cannabis Control Act. (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d).) The complaint for search warrant was supported by an attached affidavit executed by James Healy, a law enforcement officer of the Quad-City Metropolitan Enforce-

ment group. Defendant filed a motion to quash the search warrant and to suppress the evidence seized pursuant thereto. This motion was allowed by the trial court and the evidence was suppressed. The People appeal.

Since the affidavit is the key element controlling the propriety of the issuance of the search warrant, we set it out here in full:

### AFFIDAVIT

Comes now James Healy, hereinafter referred to as your affiant, and states and deposes as follows:

1. That your affiant is a law enforcement officer of Quad-City Metropolitan Enforcement Group.

2. That your affiant has received information from an ordinary citizen that amphetamines and marijuana are currently within a house at 1927 11th Street, Moline, Illinois, and that amphetamines and marijuana are being sold from said house. In support of said allegations, affiant states the following: that within the last forty-eight (48) hours prior to December 7, 1979, James Harris was given Forty-five and No/100 ($45.00) Dollars in United States currency and was taken to the area of 1927 11th Street, Moline, Illinois and purchased from one Duane Jacobs a quantity of purported marijuana and amphetamines. While in the residence, James Harris was told by Duane Jacobs that he expected to receive one (1) ounce of cocaine on December 7, 1979. James Harris left the residence, was picked up by the surveillance unit and handed over to agents a packet containing a substance which later was tested and shown to contain marijuana and amphetamines.

3. Before this purchase, James Harris was given United States currency for the purchase, was searched prior to receiving the money and then taken to the area of 1927 11th Street, Moline, Illinois where he was continually under surveillance thereafter. James Harris, after receiving the marijuana and amphetamines, immediately turned over the packet to agents from Quad-City Metropolitan Enforcement Group and again was researched with nothing being found.

Wherefore, your affiant believes there is probable cause that the above-listed items in the Complaint for Search Warrant are located in the residence at 1927 11th Street, Moline, Illinois, Rock Island County.

Further affiant sayeth not.

Signed,

James Healy
Affiant

So far as the law applicable to this case is concerned, it is covered by the fourth amendment to the United States Constitution; by the United States Supreme Court cases of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584; *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674; and *United States v. Carmichael* (7th Cir. 1973), 489 F.2d 983.

The fourth amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Case law cited above has interpreted the fourth amendment to mean that while an affidavit for a search warrant may be based on hearsay, it must inform the magistrate of: (1) underlying circumstances upon which the informant's conclusions are based; and (2) the underlying circumstances from which the officer concluded that the informant was credible or his information reliable.

Testimony brought out at the preliminary hearing and at the suppression hearing in this case disclosed that Officer James Healy deliberately swore falsely in his affidavit. The James Harris named in the affidavit was really some other unnamed person. The name used was false and Healy knew it, but the judge issuing the search warrant was deliberately misled to believe that James Harris was the real name of the informant. Further, a fair reading of the affidavit would not cause one to believe that the "ordinary citizen" referred to in the affidavit and the "James Harris" named therein were one and the same person. In fact, testimony disclosed that they were. Such wording of the affidavit constituted a careful, cunning and calculated scheme to confuse and mislead the court.

■■■ *Franks v. Delaware*, cited above, authorizes inquiry into questions of false and misleading search warrant affidavits where false statements are not apparent from a mere reading of the document itself. *United States v. Carmichael*, cited above, is authority for the proposition that deliberate perjury by a government affiant is grounds for striking not only the false statements but the warrant itself and any evidence produced from a search based thereon. This is just such a case. It should also be added that the conduct of Officer Healy in this situation is strongly condemned.

■■ Additionally, however, and quite apart from its proven falsities, the affidavit is defective on its face. What it does not disclose tells more about

the insufficiency of the affidavit than what it does disclose. It does not disclose *who* gave James Harris the cash or *who* took Harris to the place of the alleged purchase. It does not even disclose *how* the affiant knows that James Harris was searched or was picked up by "the surveillance unit," etc. In short, no source of this information is disclosed. It is impossible to determine whether affiant knows this information because he was there and participating or because some unidentified source furnished this information to him. This clearly fails the test of *Aguilar* and *Spinelli*.

Thus, the affidavit for search warrant in this case is defective on the dual grounds of falsity and insufficiency, either of which would be fatal defects, even if standing alone.

The decision of the trial court to quash the search warrant and suppress the evidence seized is accordingly affirmed.

Judgment affirmed.

SCOTT and STOUDER, JJ., concur.